

# THE ATTORNEY GENERAL
# OF TEXAS

GROVER SELLERS                    AUSTIN 11, TEXAS
~~JOHN DAN GILBERT~~RD
ATTORNEY GENERAL

Honorable W. B. King, Accountant
Joint Legislative Committee
Austin 11, Texas

Dear Sir:                          Opinion No. O-5928
                                   Re: Interpretation of Section 4,
                                       Article 1, House Bill 176,
                                       48th Legislature.

        Your communication addressed to this department
and dated March 22, 1944, reads as follows:

        "Will you please answer the questions set forth
below pertaining to House Bill No. 176, Section 4 of
the Equalization Aid Law of Texas.

        "We quote the following from Section 4:

        "'Sixty-five per cent (65%) average
        daily attendance shall be based for
        the entire school term or, at the
        election of the Schools and with the
        approval of the Legislative Accountant,
        may be based upon the first four months
        thereof.'

        "The law itself, in no respect, offers any clarity
to us concerning the auditing of applications for average
daily attendance purposes; and we feel it imperative
to have a clarification of this particular Section.

        "There is a variance of ten days between a school
month and a calendar month; and in this instance,
the law does not specify which of these months, the
school or the calendar, shall be used in computing
average daily attendance 'based on the first four
months of the school term.' Pursuant to this, a ques-
tion arises as to whether this 'four months period'
begins with the opening of school or whether it pertains
to the actual number of days that the school has oper-
ated. (For example, many schools begin the term in
the month of August teach for a period of one month or
six weeks, and temporarily close for crop harvestings).

"In summation, we respectfully submit the following:

"(1)  What constitutes four (4) months
      as spoken of in Section 4, House
      Bill Number 176, Acts of the 48th
      Legislature?

"(2)  Is this four (4) months period (as
      mentioned above) to be based on the
      actual number of days during which
      the school operates and is available
      for scholastic attendance or could
      holidays and periodic recesses, be
      excluded in compiling the average
      daily attendance?

"(3)  Considering any holding which you
      make, could a school district submit
      additional Average Daily Attendance
      reports, if after its election to
      file a report at the end of the first
      4 months, it failed to meet the re-
      quirements set forth otherwise in
      the law?"

The Section 4 referred to in your communication is Section 4 of Article 1 of said House Bill 176.

Article 23, Revised Civil Statutes, provides, in part, as follows:

"The following meaning shall be given to each of the following words, unless a different meaning is apparent from the context:

"* * *

"(15) 'Month' means a calendar month.

"(16) 'Year' means a calendar year."

In the case of McKinney v. State, (Court of Crim. Appeals of Texas) 66 S. W. 769, it was held that "a month, as used in the civil statutes, is a calendar month, and is determined arbitrarily by the number of days that the calendar gives to each particular month; that is, thirty-one days for January; twenty-eight days for February, except leap year, etc." The same case holds, however, that when used in a criminal statute, the words "one month" mean thirty days.

It should be observed, however, that the meaning to be given to each of the words covered by Article 23, supra, shall be given as therein set forth, <u>unless a different meaning is apparent from the context.</u>

It should likewise be observed that Section 4 of Article 1 of H. B. 176, 48th Legislature, is part of the current bill providing for State aid to public schools, and deals with average daily school attendance. The context of the entire bill has reference to school matters. Therefore, it is clear to our minds that the words "first four months thereof," as used in Section 4, supra, and quoted in your communication to this department, have reference to school months rather than calendar months.

What, then, is a school month?

Article 2906, Revised Civil Statutes, reads as follows:

"Public schools shall be taught for five days in each week. Schools shall not be closed on legal holidays unless so ordered by the trustees. <u>A School month shall consist of not less than twenty school days, inclusive of holidays,</u> and shall be taught for not less than seven hours each day, including intermissions and recesses." (Emphasis ours)

The statute, while fixing twenty as the minimum number of school days in a school month, does not fix the maximum number of such days. It is therefore, in this respect, ambiguous and uncertain. Construction is required to determine its meaning. 39 Tex. Jur., p. 160, par. 88.

"The courts will ordinarily adopt and uphold a construction placed upon a statute by an executive officer or department charged with its administration, if the statute is ambiguous or uncertain, and the construction so given it is reasonable." <u>39 Tex. Jur. pp. 235-236, par. 126.</u>

It is our understanding from the office of the State Superintendent of Public Instruction, that the Department of Education has, since its passage, interpreted Article 2906, Revised Civil Statutes, as defining a <u>school month</u> to mean a month of four weeks consisting of <u>five school days</u> in each week, including holidays, or a total of twenty school days, including holidays, in each school month. Thus, a school term of nine months means one consisting of 180 school days, including holidays. This is not an unreasonable construction. Such departmental construction has for many years been the basic guide in reference to numerous school matters not specifically covered by our statutes. We, therefore, feel compelled to adopt such

construction as being reasonable and proper. See Railroad
Commission of Texas v. T. & N. O. R. Co., 42 S. W. (2d) 1091,
error refused; State v. Gunter, 81 S. W. 1028, error refused;
Cotton v. Commonwealth Loan Co., (Sup. Ct. of Ind.) 190 N. E.
853.

      The Indiana case last cited is particularly applicable
to a proper interpretation of the word "months," as contained in
your first question. The appellants in that case plead usury
as a defense in the court below. They urged that the word "month,"
as used in the statute, meant a calendar month. They relied
upon Section 247, Burns' 1926, which read as follows:

      "The construction of all statutes of this State
    (Indiana) shall be by the following rules, unless such
    construction be plainly repugnant to the intent of the
    legislature or of the context of the same statute; * * *

      "Fifth. The word 'month' shall mean a calendar
    month, and word 'year' shall mean a calendar year,
    unless otherwise expressed; * * *" (Emphasis ours)

      Appellee was a licensee under the petty loan statute
of Indiana. Such licensees were originally under the supervision
of the Auditor of State. In 1919 the Legislature transferred
the supervisory power of the auditor to the State Banking De-
partment. Said Banking Department, through its Division of
Industrial Loans, had from time to time issued regulations govern-
ing licensees under said statute. One of its printed rules re-
quired that "all interest shall be computed on a basis of 30
days to each of the 12 months of the year." Also, "interest
shall be computed on the exact amount of money for the actual
number of days, not to exceed 30 days to the month."

      In disposing of said case, the Court took notice of
said departmental interpretation of the statute, as it would
take notice of an inferior court's decision. The court further
stated: "It (the departmental interpretation) does not bind us
in our construction of the statute, but lends support to the
contention that the statute may be reasonably construed as in-
tending that thirty days might be treated as a month." In over-
ruling the decision of the Appellate Court of Indiana, in Banc,
184 N. E. 578, the Supreme Court of Indiana in effect adopted
the departmental interpretation as above set forth. It held
that the word "month" as used in said petty loan statute, had
reference to the commercial month of thirty days. While a con-
struction of the statutes providing for forfeitures was also
involved in said Supreme Court Opinion, it is obvious that the
same conclusion as therein stated would have been reached had
such construction not been involved.

Attention is also directed to Article 2903, Revised Civil Statutes, which provides as follows:

"The scholastic year shall commence on the first day of September of each year and end on the thirty-first day of August thereafter."

In view of the foregoing, your questions as submitted, are answered as follows:

(1) Eighty school days, including holidays, constitute four months within the meaning of Section 4, Article 1, H. B. 176, Acts of the 48th Legislature.

(2) Holidays and periodic recesses, during which schools are ordered closed by the trustees, are to be excluded in computing the average daily attendance. Holidays on which schools are taught and not closed by proper order or orders of the trustees, are to be included in such computation.

(3) Based on the wording of the provisions of Section 4, Article 1, H. B. 176, 48th Legislature, it is the opinion of this department that the required sixty-five (65%) per cent average daily attendance is primarily based upon the entire school term. Therefore, a school district which files a report at the end of the first four school months, which report fails to show an average daily attendance of sixty-five (65%) per cent, may thereafter submit a Daily Attendance Report based upon the entire school term.

Let it be understood that the foregoing answers are based on school months and school terms included within a scholastic year, as hereinabove defined.

Very truly yours

ATTORNEY GENERAL OF TEXAS

APPROVED APRIL 11, 1944

/s/ L. H. Flewellen

/s/ G. P. Blackburn

By

G. P. Blackburn
Acting Attorney General of Texas

L. H. Flewellen
Assistant

LHF:EP:ELB

APPROVED
Opinion
Committee

By B.W.B.
Chairman